J-S73001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAKELL ADIMU BELL | : | |
| | : | |
| Appellant | : | No. 1054 MDA 2019 |

Appeal from the Judgment of Sentence Entered March 1, 2019
In the Court of Common Pleas of Snyder County Criminal Division at
No(s):  CP-55-CR-0000514-2017


BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 10, 2020**

Appellant, Shakell Adimu Bell, appeals from the March 1, 2019 judgment of sentence imposed by the Court of Common Pleas of Snyder County following a jury trial.  We affirm.

On July 19, 2017, Appellant was operating a white Subaru Forester owned by his girlfriend, Natalie Walter, on South Old Trail, Snyder County, a roadway temporarily closed to through traffic due to the installation of gas lines.  N.T., 6/18/18, at 12–13.  As Appellant approached the construction area where a flag person was controlling traffic, the flagger stopped him and instructed he could proceed only as far as National Beef, a company located just before the construction zone.  *Id.*  Appellant proceeded past National Beef, drove into a construction trench across the roadway, and crashed his vehicle.  *Id.*  When Pennsylvania State Trooper Philip Dohner

arrived at the scene, Appellant was not present, but Natalie Walter was sitting near the vehicle. *Id.* at 4. Ms. Walter explained that Appellant left to go to a doctor's appointment. Trooper Dohner spoke to the flagger, then left in search of Appellant. *Id.* at 4–5. Trooper Dohner subsequently stopped Appellant walking further along South Old Trail, where he administered field-sobriety tests. *Id.* at 5–6. Appellant was arrested, and "chemical testing [was] done on a blood sample and sent to a lab." *Id.* at 6.

A ten-count information was filed on December 27, 2017, charging Appellant with Driving While Operating Privilege is Suspended or Revoked; Driving under the Influence ("DUI") of Controlled Substance-Schedule I; DUI of Controlled Substances-Metabolite; DUI of Controlled Substances-Impaired Ability; Driving without a License; Driving while Operating Privilege is Suspended or Revoked-DUI Related; Use of Hearing Impairment Devices; Driving at Safe Speed; Careless Driving; and Reckless Driving.[1]

Appellant filed an *omnibus* pretrial motion on February 22, 2018, that included, *inter alia*, a motion to suppress the chemical test of his blood. Motion to Suppress, 2/22/18, at ¶ 21. Following a June 18, 2018 hearing, the trial court denied Appellant's omnibus pretrial motion. Order, 6/19/18.

Appellant selected a jury on October 15, 2018, and trial ensued on November 20, 2018. The jury found Appellant guilty of DUI of controlled

---

[1] 75 Pa.C.S. §§ 1543(b)(1.1)(i), 3802(d)(1)(i), 3802(d)(1)(iii), 3802(d)(2), 1501(a), 1543 (b)(1), 3314(a), 3361, 3714(a), and 3736(a), respectively.

substances-metabolite, 75 Pa.C.S. § 3802(d)(1)(iii), and acquitted him of DUI with a Schedule 1 controlled substance in his blood, 75 Pa.C.S. § 3802(d)(1)(i), and DUI-impaired ability, 75 Pa.C.S. § 3802(d)(2). After the jury rendered its verdict, the trial court found Appellant guilty of the following summary offenses: DUI while operating privilege is suspended or revoked, 75 Pa.C.S. § 1543(b)(1.1)(i), driving without a license, 75 Pa.C.S. § 1501(a), driving while operating privilege is suspended-DUI related, 75 Pa.C.S. § 1543(b)(1), and careless driving, 75 Pa.C.S. § 3714(a), and not guilty of three other summary offenses. N.T., 11/20/18, at 217.[2]

The trial court ordered a Presentence Investigation ("PSI") Report, which revealed that Appellant had been convicted of DUI ten years earlier on November 24, 2009. Trial Court Opinion, 9/16/19, at 3. On February 25, 2019, Appellant filed a motion to treat the instant conviction as a first offense. Prior to sentencing on March 1, 2019, the trial court denied the motion and sentenced Appellant. "The standard range of the Sentencing Guidelines was 12-18 months and the aggravated range was 21 months. . . . The [c]ourt then

---

[2] Dr. Edward Barbieri, a forensic toxicologist at NMS Laboratories, "an approved laboratory to determine analyses of blood for controlled substances under the [Motor] Vehicle Code pursuant to 47 Pa. Bulletin 518," testified at trial as an expert in the field of pharmacology and toxicology. N.T., 11/20/18, at 138–139. Dr Barbieri testified that Appellant had 1.6 nanograms per milliliter of 11-Hydroxy Delta-9 THC, the active metabolite in marijuana; 9.9 nanograms per milliliter of Delta-9 THC, the active ingredient in marijuana, and 29 nanograms per milliliter of Delta-9 Carboxy THC, which in the inactive metabolite in marijuana. *Id.* at 150–151.

sentenced [Appellant] to a State Prison sentence of 21 months to 5 years" on count two, DUI of Controlled Substances-Metabolite, 75 Pa.C.S. § 3802(d)(1)(iii). *Id.* at 3–4. The trial court also sentenced Appellant on count six, Driving While Operating Privilege is Suspended or Revoked-DUI Related, 75 Pa.C.S. § 1543(b)(1), to ninety days incarceration, imposed consecutively to count two. *Id.* at 4. The trial court either found the other convictions merged for sentencing purposes or imposed fines on those counts. Appellant filed a post-sentence motion on March 7, 2019, which the trial court denied on June 11, 2019, following a hearing. Appellant filed a timely notice of appeal; both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal, which we have reordered:

1. Did the suppression court err in denying [Appellant's] motion to suppress the blood evidence in this matter, and/or motion to reconsider the denial of suppression of the blood evidence as the Commonwealth failed to establish probable cause at the suppression hearing where the affiant did not establish his training and experience with marijuana or field sobriety tests and the lay witness never informed the affiant of the basis for her ability to identify the smell of marijuana prior to the arrest of [Appellant]?

2. Did the trial court err in finding that 75 Pa.C.S. § 3802(d)(1)(iii) and 75 Pa.C.S. § 1543(b)(1.1)(i) are not unconstitutionally vague insofar as they criminalize an individual's operation of a motor vehicle with any amount of an inactive metabolite in their blood?

3. Did the trial court err in refusing to apply the rule of lenity pursuant to the canon of constitutional avoidance to find that the term "metabolite" as used in 75 Pa.C.S. § 3802(d)(1)(iii) and 75 Pa.C.S. § 1543(b)(1.1)(i) requires proof that an active

- 4 -

metabolite be in an individual's blood and not an inactive metabolite?

4. Did the sentencing court err in denying [Appellant's] motion to treat his DUI offense as a first offense for sentencing purposes as 75 Pa.C.S. § 3806 is unconstitutional pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 133 S.Ct. 2151 (2013), and is not severable from 75 Pa.C.S. § 3804 and 75 Pa.C.S. § 3803?

5. Is [Appellant's] sentence of not less than 21 months to not more than 5 years illegal insofar as it is in excess of 6 months and where no *mens rea* was alleged by the Commonwealth or proven to the jury beyond a reasonable a doubt?

Appellant's Brief at 4–5.

We first address Appellant's suppression issue. Appellant argues the trial court erred in failing to suppress the blood-test results.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 2008 PA Super 6, 941 A.2d 14, 26–27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted). Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. *See Commonwealth v. Clemens*, 2013 PA Super 85, 66 A.3d 373, 378 (Pa. Super. 2013).

*Commonwealth v. McCoy*, 154 A.3d 813, 815–816 (Pa. Super. 2017) (quoting *Commonwealth v. Roberts*, 133 A.3d 759, 771 (Pa. Super. 2016)). "Furthermore, our Supreme Court in *In the Interest of L.J.*, 622 Pa. 126, 79 A.3d 1073, 1085 (2013), clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing." *McCoy*, 154 A.3d at 816.

The Commonwealth's evidence at the suppression hearing is as follows. Chelsea Bendele, the flagger with the road crew that was installing gas lines on the roadway on South Old Trail in Snyder County on July 19, 2017, testified at the suppression hearing. N.T., 6/18/18, at 12–16. When Appellant proceeded by Ms. Bendele, she stopped Appellant, as she did all vehicles, and advised Appellant that the road was closed to through traffic and open only for ingress and egress to National Beef, a company located near where the road crew was working. *Id.* at 12–13. Despite the warning, Appellant failed to turn into National Beef and crashed his vehicle into a trench across the road, an area clearly marked with traffic cones. *Id.* Ms. Bendele testified that Appellant held a "blunt" in his hand and that she smelled "weed."[3] *Id.* at 14.

Trooper Dohner, who was dispatched to the one-vehicle crash at 11:30 a.m., also testified. N.T., 6/18/18, at 3. When the officer arrived, Appellant

_____

[3] In response to subsequent inquiry by the trial court, Ms. Bendele testified that a blunt is rolled marijuana inside of paper. She further testified she can identify marijuana by its odor because "I have hung out with people who have [smoked it]." N.T., 6/18/18, at 16.

- 6 -

was not present and Natalie Walter, who owned the car, was sitting near the vehicle. *Id.* at 4. Ms. Walter told Trooper Dohner that Appellant had been driving. Trooper Dohner testified that Ms. Walter explained that Appellant had telephoned her and asked her to come to the scene because he had to get to a doctor's appointment "further north on the Old Trail." *Id.* at 4–5. Ms. Walter told the trooper she advised Appellant, "[Y]ou can go to the doctor's appointment [and] I'll sit with the car." *Id.* at 4.

Trooper Dohner proceeded on South Old Trail at noon or 12:15 p.m. and located Appellant walking along the roadway. N.T., 6/18/18, at 5–6. The trooper testified that when he asked Appellant what happened, Appellant told him he was "on his phone"[4] when he crashed into the trench. *Id.* at 6. The trooper then asked Appellant if he smoked marijuana. Trooper Dohner testified Appellant stated that he smoked marijuana at "approximately two in the morning." *Id.* at 5, 6. Noting that Appellant had bloodshot eyes and dilated pupils, and in light of Appellant's admission that he had smoked marijuana along with Ms. Bendele's observation of a blunt in Appellant's hand accompanied by the odor of marijuana, Trooper Dohner conducted field sobriety tests.

Appellant's suppression motion asserted that:

the arresting officer, Trooper Dohner, lacked probable cause to believe [Appellant] was operating his motor vehicle under the

---

[4] Trooper Dohner testified that Appellant stated he utilized an "ear piece" to talk on the telephone. N.T., 6/18/18, at 11.

influence of alcohol or a controlled substance. In denying relief, the suppression court indicated that it was finding probable cause existed based upon the credible testimony of the flagger that she saw [Appellant] smoking marijuana after he crashed his vehicle (R.R., p.41) and based upon Trooper Dohner's testimony as to the appearance of [Appellant] and his performance on the Standardized Field Sobriety Tests.

Appellant's Brief at 11. Appellant avers that because Trooper Dohner "never inquired into the flagger's ability to detect and identify marijuana" nor described his own "training and experience with marijuana or even with field sobriety tests," the Commonwealth lacked probable cause to arrest Appellant, and the trial court should have suppressed the ensuing blood tests. *Id.* at 11–12; N.T., 6/18/18, at 12.

There are three categories of interactions between private citizens and the police. *Interest of A.A.*, 195 A.3d 896, 904 (Pa. 2018). "A 'mere encounter' does not require any level of suspicion or carry any official compulsion to stop or respond ... an 'investigative detention' permits the temporary detention of an individual if supported by reasonable suspicion ... and an arrest or custodial detention ... must be supported by probable cause." *Id.*

Here, we are initially concerned with an investigative detention.

To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion. *Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000). The asserted grounds for an investigative detention must be evaluated under the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66

- 8 -

L.Ed.2d 621 (1981). So long as the initial detention is lawful, nothing precludes a police officer from acting upon the fortuitous discovery of evidence suggesting a different crime than that initially suspected—such as the odor of alcohol on the breath of a driver . . . . However, an unjustified seizure immediately violates the Fourth Amendment rights of the suspect, taints the evidence recovered thereby and subjects that evidence to the exclusionary rule. *See, e.g.,* [*Commonwealth v.*] *Melendez*, 676 A.2d [226,] 229–230 [(Pa. 1996)].

*Commonwealth v. Hicks*, 208 A.3d 916, 927–928 (Pa. 2019), *cert. denied sub nom.*, *Pennsylvania v. Hicks*, 19-426, 2019 WL 6689877 (U.S. Dec. 9, 2019).

The trial court denied suppression. At the conclusion of the suppression hearing, the trial court stated it found Ms. Bendele's testimony persuasive and concluded that Trooper Dohner had probable cause to arrest Appellant. In pertinent part, the trial court noted:

[Ms. Bendele] testified that she saw [Appellant] smoking marijuana[5] while holding it in his hand and she smelled it. That would be enough probable cause to believe he was consuming it while he was there.

The fact that he drove into a ditch that was marked with cones and had a flagger there would give the impression of whether he was impaired that he couldn't drive safely. He admitted to smoking marijuana albeit hours before this. It's not uncommon that people get confused on exactly what time they did certain things. Trooper testified [Appellant's] eyes were bloodshot and his pupils were dilated . . . .

N.T., 6/18/18, at 19–20.

_____

[5] Ms. Bendele's testimony was that she did not see Appellant smoking marijuana, but she observed him holding it and she smelled it. N.T., 6/18/18, at 14.

- 9 -

In its Pa.R.A.P. 1925(a) opinion, the trial court supported its denial of suppression as follows:

> [T]he smell of marijuana is relatively common. The flagger seemed well versed in terminology surrounding marijuana consumption, hence the term blunt. In addition, the [c]ourt's observation of flagger's testimony was that she was extremely confident that she was aware what marijuana smelled like. [Appellant's] argument seems to go more to the weight of the flagger's testimony th[a]n to its admissibility.

Trial Court Opinion, 9/16/19, 4–5. The trial court also opined that it was familiar "with the training that Pennsylvania Police State Troopers complete at the Pennsylvania State Police Academy prior to becoming State Police Troopers." *Id.* at 5.

Our review of the record compels our conclusion that the Commonwealth carried its burden of proof at the suppression hearing to support the admissibility of the blood test results. *See Commonwealth v. Salter*, 121 A.3d 987, 996 (Pa. Super. 2015) (At a suppression hearing, "the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible."); Pa.R.Crim.P. 581(H) ("The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights."). Herein, Trooper Dohner suspected that Appellant operated his vehicle under the influence of a controlled substance based on his observation that: 1) Appellant drove through a clearly marked construction zone and crashed into a ditch despite being stopped by the posted

- 10 -

flagger and warned about the hazard; 2) the flagger observed Appellant with marijuana and smelled it; 3) Appellant had fled the scene; 4) Appellant had bloodshot eyes and dilated pupils; and 5) Appellant admitted that he smoked marijuana earlier.

The odor of marijuana alone can be sufficient to support at least reasonable suspicion. *Interest of A.A.*, 195 A.3d 896, 904 (Pa. 2018). Moreover, at the suppression hearing, in response to Commonwealth questioning, Trooper Dohner revealed that as a result of field-sobriety testing, Appellant "show[ed] signs of intoxication." N.T., 6/18/18, at 6. Defense counsel, himself, inquired into the specific tests administered by Trooper Dohner.

> Q. [By Defense Counsel:] Okay. All right. Moving on to the field sobriety test, how many tests did you perform?
>
> A. [By Trooper Dohner:] I performed three.
>
> Q. Okay. The first was the HGN,[6] correct?
>
> A. Correct.
>
> Q. And were there any markers on the HGN?
>
> A. There were not.
>
> Q. The second was the walk-and-turn, correct?
>
> A. Correct.
>
>                  \* \* \*

---

[6] HGN is the Horizontal Gaze Nystagmus test. *Commonwealth v. Gause*, 164 A.3d 532, 535 n.5 (Pa. Super. 2017).

- 11 -

Q.      During the walk-and-turn test, was there a physical line –– was there an actual line on which he was walking?

A.      There was not.

* * *

THE COURT:  There's—how many indicators are there for you to check on in the walk-and-turn?

A.      For our purposes of the standardized field sobriety, there's eight clues.

THE COURT:  Eight?

A.      Eight, correct.

THE COURT:  So three out of eight indicators on the walk-and-turn and one out of eight on the one-leg stand?

A.      One out of four on the one-leg stand.

THE COURT: Okay. And what was the third field sobriety test?

A.      The one-leg stand.

THE COURT: One-leg stand, walk-and-turn.

A.      The HGN.

N.T., 9/18/18, at 9–10.

In consideration of the totality of the circumstances, in the light most favorable to the Commonwealth, the evidence presented at the suppression hearing supports the existence of probable cause.  Accordingly, the trial court did not err in denying Appellant's motion to suppress.

In his next two issues, Appellant challenges 75 Pa.C.S. § 3802(d)(1)(iii) and 75 Pa.C.S. § 1543(b)(1.1)(i).  First, he asserts the statutes are void for vagueness insofar as "they criminalize an individual's operation of a motor vehicle with any amount of an inactive metabolite in their blood."  Appellant's

Brief at 28. Second, he suggests the trial court erred in refusing to apply the rule of lenity to find that the term "metabolite" as used in the statutes "requires proof that an active metabolite be in an individual's blood and not an inactive metabolite." *Id.* at 36. We address the issues together.

The statutes in question provide, in pertinent part, as follows:

**§ 3802. Driving under influence of alcohol or controlled substance**

\* \* \*

**(d) Controlled substances.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood **any amount** of a:

(i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),[1] known as The Controlled Substance, Drug, Device and Cosmetic Act;

(ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

(iii) metabolite of a substance under subparagraph (i) or (ii).

    [1] 35 P.S. § 780-101 *et seq*.

75 Pa.C.S. § 3802(d)(1)(iii) (emphasis added).

**§ 1543. Driving while operating privilege is suspended or revoked**

\* \* \*

**(b) Certain offenses.—**

- 13 -

* * *

> (1.1)(i) A person . . . who at the time of testing has in his blood **any amount** of a Schedule I or nonprescribed Schedule II or III controlled substance, . . . or its metabolite . . . and who drives a motor vehicle on any highway or trafficway of this Commonwealth at a time when the person's operating privilege is suspended or revoked as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3802 or former section 3731 or because of a violation of section 1547(b)(1) or 3802 or former section 3731 or is suspended under section 1581 for an offense substantially similar to a violation of section 3802 or former section 3731 shall, upon a first conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000 and to undergo imprisonment for a period of not less than 90 days.

75 Pa.C.S. § 1543(b)(1.1)(i) (emphasis added).

The trial court has offered no explanation for its disposition of the issues. Regarding the statutes' constitutionality, the trial court stated, in whole, "Statu[t]es are presumptively constitutional.  This [c]ourt finds no violations of the Pennsylvania or United States Constitutions."  Trial Court Opinion, 9/16/19, at 5.  Similarly, regarding the claim that the trial court refused to apply the Rule of Lenity, the trial court stated in conclusory fashion, "The [c]ourt does not find any ambiguity in the wording of the Statute." **Id**. at 6.

Our standard of review is clear:

> Because this is a matter of statutory interpretation, our scope of review is plenary and the standard of review is *de novo*.  As always, when interpreting statutory provisions, we aim to ascertain and effectuate the intent of the General Assembly.  1 Pa.C.S. § 1921(a).  The best indication of the General Assembly's intent may be found in the plain language of the statute.  "When the words of a statute are clear and free from all ambiguity, the

- 14 -

letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

*Commonwealth v. Popielarcheck*, 190 A.3d 1137, 1140 (Pa. 2018) (internal citations omitted). "The party seeking to overcome the presumption of validity must meet a formidable burden." *Commonwealth v. Costa*, 861 A.2d 358, 361 (Pa. Super. 2004). Moreover, "[w]e presume that the General Assembly intends the entire statute to be effective and certain, and thus construe a statute to give effect to all of its provisions. 1 Pa.C.S.A. § 1922(2)." *In Interest of R.A.F.*, 149 A.3d 63, 67 (Pa. Super. 2016). "A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of a finding of constitutionality." *Costa*, 861 A.2d at 361 (quoting *Commonwealth v. Mayfield*, 832 A.2d 418, 421 (Pa. 2003)).

In the case *sub judice*, Appellant argues that Sections 3802(d) and 1543(b) are unconstitutionally vague as applied to Appellant because they inflict criminal penalties for operating a motor vehicle with any trace amounts of an inactive metabolite in the bloodstream, but fail "to give warning of the conduct" that is criminalized. Appellant's Brief at 31. Appellant argues as follows:

> [T]he Commonwealth only proved beyond a reasonable doubt that [Appellant] operated a motor vehicle with the inactive metabolites of marijuana in his blood. Inactive metabolites may stay in the blood for many days following ingestion of marijuana and have no intoxicating effects on a driver which would put them on notice as to whether they were violating the law at the time. Therefore, [Appellant], being a man of ordinary intelligence, had no way of

- 15 -

knowing that he had inactive metabolites in his blood and that he was in violation of 75 Pa.C.S. § 3802(d)(1)(iii) and 75 Pa.C.S. § 1543(b)(1.1)(i) when he drove after smoking marijuana . . . .

To avoid the constitutional vagueness concerns that this case presents the court with regard to 75 Pa.C.S. § 3802(d)(1)(iii) and 75 Pa.C.S. § 1543(b)(1.1)(i), this Honorable Court should interpret the term "metabolite" as used in these two statutes to mean only active metabolites. Under this interpretation, the evidence was insufficient to find [Appellant] guilty as the Commonwealth could not establish and the jury did not find that the active chemicals of marijuana found in [Appellant's] blood were not caused by ingestion after driving.

Appellant's Brief at 9–10. We disagree.

Appellant significantly ignores that Section 3802(d)(1)(iii) proscribes operation of a vehicle if there is **any** amount of metabolite of a Schedule I or II substance, that has not been medically prescribed for the individual, in the individual's blood. 75 Pa.C.S. § 3802(d)(1)(iii). It does not require proof that "the individual is rendered incapable of safely driving," as in subsection 3802(a)(1). Thus, Appellant's claim that because "[i]nactive metabolites may stay in the blood for many days following ingestion of marijuana and [they] have no intoxicating effects" that would put him "on notice" that he was "violating the law at the time," is irrelevant. Section 3802(d)(1)(iii) requires only that metabolite of the Schedule I or II drug, which includes marijuana, is present. Drivers are on notice that they may not ingest the drug and drive.

In undertaking a challenge to a statute based on vagueness, "we bear in mind that every Pennsylvania statute is presumed valid and will not be declared unconstitutional unless the party challenging it carries a 'heavy

burden of persuasion' to demonstrate that the statute 'clearly, palpably, and plainly violates the Constitution.'" ***Commonwealth v. Morrison***, 934 A.2d 709, 713 (Pa. Super. 2007). Moreover, the "due process void-for-vagueness doctrine 'requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" ***Id.*** (citing ***Commonwealth v. Duda***, 923 A.2d 1138, 1147 (Pa. 2007)).

In a case rejecting a mandatory requirement for expert testimony in all situations involving 75 Pa.C.S. § 3802(d), our Supreme Court compared § 3802(d)(1) to subsection 3802(a)(2), (b), and (c) and explained as follows:

> Most of the alcohol-related provisions, *i.e.*, subsections 3802(a)(2), (b), and (c), prohibit driving after an individual has imbibed sufficient alcohol such that the alcohol concentration in that individual's blood or breath reaches certain, specific levels within two hours after driving. To prove the specific level of alcohol in the defendant's blood or breath at the relevant time, a blood or breath test is obviously required. . . .
>
> The General Assembly chose to construct a similar statutory framework with regard to prohibitions against driving after drug usage. First, subsection 3802(d)(1) [as in the instant case,] prohibits one from driving if there is **any amount** of a Schedule I controlled substance, **any amount** of a Schedule II or Schedule III controlled substance that has not been medically prescribed for the individual, or **any amount** of a metabolite of a controlled substance in one's blood. Analogously to subsections 3802(a)(2), (b), and (c) for alcohol intoxication, subsection 3802(d)(1) requires a measurement to determine if **any amount** of a Schedule I, II, or III controlled substance is detectable in the defendant's blood.

*Commonwealth v. Griffith*, 32 A.3d 1231, 1238–1239 (Pa. 2011) (emphases added). The General Assembly's use of "any amount" forecloses Appellant's vagueness challenge. An individual need not be concerned with how much of the drug he consumed; he is on notice that he cannot ingest **any** amount of the drug and operate a vehicle.

In *Commonwealth v. Etchison*, 916 A.2d 1169, 1172–1173 (Pa. Super. 2007), this Court previously addressed, *inter alia,* an overbreadth challenge to 75 Pa.C.S. § 3802(d)(1), where the defendant argued the statute violated due process, and his conviction under Section 3802(d)(1) for the presence of prohibited metabolites should be reversed. In rejecting this constitutional challenge, we stated:

> As our Supreme Court has explained, "a statute is 'overbroad' if by its reach it punishes constitutionally protected activity as well as illegal activity." If it does not reach both categories of activity, "then the overbrea[d]th challenge must fail." **There is no constitutional right to the use of marijuana prior to driving**; indeed, under Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 et. seq., which has not been deemed unconstitutional, **an individual is prohibited from any use of marijuana**.

*Id.* at 1173 (internal citations omitted) (emphases added). *See also Morrison*, 934 A.2d at 713–714 (rejecting void-for-vagueness and overbreadth challenge to 75 Pa.C.S. 3802(a)). Based upon the above

reasoning, we conclude that the challenged subsections of the statutes[7] are not void for vagueness.

Appellant also posits that the trial court erred in refusing to apply the rule of lenity "to find that the term 'metabolite' as used in 75 Pa.C.S. § 3802(d)(1)(iii) and 75 Pa.C.S. § 1543(b)(1.1)(i) requires proof that an active metabolite be in an individual's blood and not an inactive metabolite." Appellant's Brief at 36.

The rule of lenity:

provides that where a statute is penal and the language of the statute is ambiguous, the statute must be construed in favor of the defendant and against the government. Underpinning the rule of lenity is the fundamental principle of fairness that gives validity to our laws and requires a "clear and unequivocal warning in language that people generally would understand as to what actions would expose them to liability for penalties and what the penalties would be."

*Sondergaard v. Com., Dep't of Transp.*, 65 A.3d 994, 997–998 (Pa. Cmwlth. 2013) (citing *Commonwealth v. Reaser*, 851 A.2d 144, 149 (Pa. Super. 2004)) (quoting *Commonwealth v. Cluck*, 381 A.2d 472, 477 (Pa. Super. 1977)); *see also Commonwealth v. Rivera*, 10 A.3d 1276, 1284 (Pa. Super. 2010) ("[U]nder the rule of lenity, penal statutes must be strictly construed, with ambiguities being resolved in favor of the accused.").

---

[7] The similar use of "**any amount** of a Schedule I or nonprescribed Schedule II or III controlled substance or its metabolite" in 75 Pa.C.S. § 1543(b)(1.1)(i) compels the same reasoning, explanation, and disposition. (Emphasis added).

As noted *supra*, Section 3802(d)(1)(iii) does not require that a driver be impaired; rather, "it prohibits the operation of a motor vehicle by *any* driver who has *any* amount of a metabolite of specifically enumerated controlled substances in his blood, regardless of impairment." **Etchison**, 916 A.2d at 1174. This subsection of the statute does not distinguish between active and inactive metabolites. In Pennsylvania, a reasonable person understands that ingestion of marijuana prior to operating a motor vehicle could subject him to criminal liability. We agree with the Commonwealth that "Section 3802(d)(1) is clear, unambiguous and its message is straightforward: do not ingest marijuana and thereafter drive a motor vehicle." Commonwealth Brief at 10.

Indeed, we are unconvinced by Appellant's claim that the rule of lenity should be applied. "[T]he touchstone of the rule of lenity is statutory ambiguity." **Bifulco v. United States**, 447 U.S. 381, 387 (1980). Appellant begins with the erroneous assumption that the statutes in question are ambiguous. The United States Supreme Court has stated countless times that the rule of lenity comes into play only "after consulting traditional canons of statutory construction." **United States v. Hayes**, 555 U.S. 415, 429 (2009). Instantly, Appellant has not offered any analysis pursuant to the rules of statutory construction. Appellant's Brief at 36–40; **See Commonwealth v. Cousins**, 212 A.3d 34, 39 (Pa. 2019) (rejecting ambiguity claim, *inter alia*, where the appellant offered no support for his non-textual interpretation of the statute). As we noted *supra*, Section 3802(d)(1)(iii) prohibits the

operation of a motor vehicle by any driver who has any amount of a metabolite of specifically enumerated controlled substances in his blood. The rule of lenity applies only if, after considering text and structure, there is a "grievous ambiguity or uncertainty in the statute," such that the Court must "simply guess" what the Legislature intended. *Barber v. Thomas*, 560 U.S. 474, (2010). The trial court found no ambiguity present. Trial Court Opinion, 9/16/19, at 6. These statutes do not contain a grievous ambiguity nor do we need now simply guess what the statute means. This issue lacks merit.

Appellant's final two issues concern the sentence imposed. Because the procedural history relates to both claims, we will address them in tandem. Appellant contends the trial court erred in denying his motion to treat his DUI offense as a first offense for sentencing purposes because 75 Pa.C.S. § 3806 is unconstitutional pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013). Appellant's Brief at 17. He also maintains that his sentence of twenty-one months to five years is an illegal sentence. *Id*. at 40.

Regarding the sentence imposed, the trial court stated as follows:

> On February 25, 2019 [Appellant] filed a Motion to treat the instant conviction as a first offense. Prior to sentencing on March 1, 2019, the Court denied the Motion to treat the conviction as a first offense and sentenced [Appellant].

> At the sentencing, the [c]ourt had the benefit of a January 25, 2019 Pre-Sentence Investigation Report prepared by the Snyder County Probation Department. The Pre-Sentence Report revealed that [Appellant] had been convicted of a [DUI] offense on November 24, 2009. In addition, the Pre-Sentence

- 21 -

Report revealed that [Appellant] had a substantial criminal history. The standard range of the Sentencing Guidelines was 12-18 months and the aggravated range was 21 months. It is significant that [Appellant] did not dispute the prior conviction.

The [c]ourt then sentenced [Appellant] to a State Prison sentence of 21 months to 5 years. The [c]ourt stated the reasons for the aggravated sentence on the record. Specifically it was due to [Appellant's] driving through a construction zone and causing an accident while it was an active construction site.

The [c]ourt also sentenced [Appellant] on Count 6 of the Information to 90 days incarceration. The [c]ourt amended this sentence on June 19, 2019 to clarify that it was the [c]ourt's intent that Count 6 was to be served consecutively to the sentence imposed to Count 2.

On March 7, 2019[,] [Appellant] filed a Post-Sentence Motion. In [Appellant's] Post-Sentence Motion . . . he filed a Motion to Modify his sentence alleging it was illegal and should have been considered a first offense.

The Court held a hearing on June 10, 2019[,] and denied the Post-Sentence Motion.

Trial Court Opinion, 9/16/19, at 3–4.

At the sentencing hearing, the following exchange and argument by

Appellant's counsel occurred:

[Defense Counsel]: Your Honor, the prior is not at issue, it's the timeline for the prior within the past ten years and that's a fact that a jury would have to decide if this prior happened within the past 10 years to trigger an enhancement of the sentence. We're not disputing that the prior did not have to be proved. Alleyne and Apprendi says a prior does not have to be submitted to a jury but it's the fact that shows when the prior happened and when the current offense happened to establish that it was within the 10-year period of time. Our vision is that the section in Pennsylvania law is unconstitutional because it allows the judge to make the preponderance of the evidence determination that these facts that should be presented to the jury to enhance someone's sentence are not presented to a jury.

- 22 -

THE COURT: But that's a fact of record in a Court where the conviction is entered, that's not a fact for a jury to determine. You're saying that the jury gets to determine the date of the offense?

[Defense Counsel]: No, Your Honor, what we're saying is that we're arguing the jury should be the one to find beyond a reasonable doubt the date of a prior conviction and the date of the current conviction to determine if it's within the 10-year lookback of the statute to establish that it is a second offense.

* * *

THE COURT: [Appellant's] motion to treat the instant conviction as a first offense is denied. By the Court.

N.T. (Sentencing), 3/1/19, at 2–3. The trial court apparently misunderstood Appellant's argument, and viewed the claim merely as one challenging the date of the prior conviction, as evidenced by the above exchange and the trial court's disposition in it Pa.R.A.P. 1925(a) opinion, as follows: "Courts are permitted to take judicial notice of their own records. [Appellant] was convicted in this [c]ourt in November of 2009. This offense occurred in 2018. It is clear this was a second offense within the 10 year period based on the review of the [c]ourt's own records." Trial Court Opinion, 9/16/19, at 5.

In pertinent part, 75 Pa.C.S. § 3806 provides as follows:

**§ 3806. Prior offenses**

**(a) General rule.--**Except as set forth in subsection (b), the term "prior offense" as used in this chapter shall mean any conviction for which judgment of sentence has been imposed, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition before the sentencing on the present violation for any of the following:

(1) an offense under section 3802 (relating to driving under influence of alcohol or controlled substance);

(2) an offense under former section 3731;

(3) an offense substantially similar to an offense under paragraph (1) or (2) in another jurisdiction; or

(4) any combination of the offenses set forth in paragraph (1), (2) or (3).

**(b) Timing.--**

(1) For purposes of sections 1553(d.2) (relating to occupational limited license), 1556 (relating to ignition interlock limited license), 3803 (relating to grading), 3804 (relating to penalties) and 3805 (relating to ignition interlock), the prior offense must have occurred:

(i) within 10 years prior to the date of the offense for which the defendant is being sentenced; or

(ii) on or after the date of the offense for which the defendant is being sentenced.

(2) The court shall calculate the number of prior offenses, if any, at the time of sentencing.

75 Pa.C.S. § 3806.

The trial court ordered and had before it a PSI Report dated January 25, 2019,[8] along with the Guideline Sentencing Form. N.T. (Sentencing), 3/1/19, at 2. In response to questioning by the trial court, Appellant's counsel indicated he had no additions or corrections to the PSI Report. *Id.*

---

[8] While a copy of the PSI Report is not in the record certified to us on appeal, Appellant's certified driving history is included as Commonwealth Exhibit 4, indicating Appellant's prior DUI conviction on July 28, 2009. Docket Entry 24K; N.T., 11/20/18, at 171.

- 24 -

Appellant's argument is as follows:

Here, [Appellant] was convicted of, *inter alia*, 75 Pa.C.S. § 3802(d)(1)(iii). This offense has a set of penalties that increases based upon prior convictions. For a first offense, a person is subject to a mandatory minimum of 72 hours in prison and a maximum of six months. 75 Pa.C.S. § 3804(c)(1); 75 Pa.C.S. § 3803(b)(2). If the person has one prior conviction for [DUI], they are subject to a mandatory minimum of 90 days in prison and a maximum penalty of 5 years. 75 Pa.C.S. § 3804(c)(2); 75 Pa.C.S. § 3803(b)(4). A third or subsequent offense increases that mandatory minimum to one year in prison. 75 Pa.C.S. § 3804(c)(3).

By itself, this scheme would be governed by ***Almendarez-Torres***[***v. United States***, 523 U.S. 224 (1998),] and pose no constitutional problem as the only facts that trigger the increases in mandatory minimum sentences and maximum sentences is a prior conviction. However, this scheme of penalties is complicated by 75 Pa.C.S. § 3806 which alters the definition of prior offenses for the purposes of 75 Pa.C.S. § 3804 and 75 Pa.C.S.§ 3803. Section 3806 expands the definition of "prior offenses" from mere prior convictions of Driving Under the Influence to include juvenile consent decrees and placement into Accelerated Rehabilitation Disposition (ARD) for [DUI] allegation. 75 Pa.C.S. § 3806(a). Section 3806 then limits the definition of "prior offenses" to offenses which occurred:

(i) within 10 years prior to the date of the offense for which the defendant is being sentenced; or

(ii) on or after the date of the offense for which the defendant is being sentenced.

75 Pa.C.S. § 3806(b)(1). Section 3806 then dictates that it is the court, at sentencing, which shall determine the number of prior offenses, 75 Pa.C.S. § 3806(b)(2).

Appellant's Brief at 18–19. While acknowledging this Court has no authority to do so, Appellant goes on to suggest that ***Almendarez-Torres*** "was wrongly decided and should be overruled." ***Id.*** at 25. This we cannot do. ***Bosse v.***

*Oklahoma*, ___ U.S. ___, 137 S.Ct. 1, 2 (2016) ("It is this Court's prerogative alone to overrule one of its precedents.").[9]

We reject Appellant's claim that *Apprendi* and *Alleyne* mandate that because Appellant had a prior DUI conviction, which has the effect of increasing the penalty for the instant offense, the prior conviction had to be submitted to a jury for determination before imposition of sentence. This claim ignores the essence of *Apprendi* that "[**o**]**ther than the fact of a prior conviction**, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 49 (emphasis added). We reject Appellant's claim.

In his final issue, Appellant argues as follows:

Appellant's judgement of sentence is unlawful in that it imposes a sentence greater than six months where no *mens rea* was pleaded in the information or found by the jury beyond a reasonable doubt. While the Commonwealth may create and prosecute absolute liability crimes, those crimes are limited to instances of minor traffic offenses carrying no greater than six months. Thus, [Appellant's] sentence of 21 months to 5 years is unconstitutional as no *mens rea* finding was made by the jury.

Appellant's Brief at 10.

This issue concerns the legality of Appellant's sentence. "When reviewing the legality of a sentence, our standard of review is *de novo* and

---

[9] Indeed, Appellant acknowledges our inability to overrule case law from the United States Supreme Court but asserts he "is obligated to preserve this argument for further appeal." Appellant's Brief at 25 n.3.

our scope of review is plenary." ***Commonwealth v. Seskey***, 170 A.3d 1105, 1107 (Pa. Super. 2017) (citation omitted).

Appellant cites 18 Pa.C.S. § 305 and by implication, 18 Pa.C.S. § 301, to support his position that the Commonwealth was required to establish *mens rea* with regard to 75 Pa.C.S. § 3802(d)(1)(iii) in order for Appellant to be sentenced to a period of incarceration beyond six months. Appellant's Brief at 40–41. Sections 301 and 305 of the Pennsylvania Crimes Code state in pertinent part as follows:

**§ 301. Requirement of voluntary act**

**(a) General rule.—**A person is not guilty of an offense unless his liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable.

18 Pa.C.S. § 301.

**§ 305. Limitation on scope of culpability requirements**

**(a) When culpability requirements are inapplicable to summary offenses defined by other statutes.—**The requirements of culpability prescribed in section 301 of this title (relating to requirement of voluntary act) . . . **do not apply to**:

* * *

(2) offenses defined by statutes **other than this title**, in so far as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof plainly appears.

18 Pa.C.S. § 305(a) (emphases added).

Review of these statutes compels the conclusion that the voluntary-act requirement set forth in Section 301 relates only to offenses defined in Title

- 27 -

18. Instead, the statutory elements of DUI offenses are set forth in Title 75. Thus, Appellant's conviction of 75 Pa.C.S. § 3802 is presumptively exempt from the requirements of 18 Pa.C.S. § 301. Further, the statutory language of 75 Pa.C.S. § 3803, grading of Title 75 offenses, omits any reference to culpability. That section provides in pertinent part:

**§ 3803. Grading**

* * *

**(b) Other offenses.**

* * *

(4) An individual who violates . . . section 3802[](d) and who has one prior offense commits a misdemeanor of the first degree.

75 Pa.C.S. § 3803. The statutory maximum sentence for a first-degree misdemeanor is five years of incarceration. ***Commonwealth v. Grow***, 122 A.3d 425, 428 (Pa. Super. 2015) (*en banc*) (citing 18 Pa.C.S. §§ 1104(1)).

Appellant cites to ***Commonwealth v. Collins***, 810 A.2d 698 (Pa. Super. 2002), where this Court interpreted the omission of any reference to culpability in 75 Pa.C.S. § 3802[10] to mean that the Legislature intended DUI to be a strict or absolute liability offense. He thus maintains that because DUI is a strict-liability offense, it must be graded as a summary offense with a

---

[10] ***Collins*** actually was addressing the former DUI statute, 75 Pa.C.S. § 3731, repealed effective February 1, 2004.

maximum penalty of ninety days imprisonment. Appellant's Brief at 41 (citing 18 Pa.C.S. § 305(b)(2) and ***Commonwealth v. Mikulan***, 470 A.2d 1339 (Pa. 1983) (Plurality)).[11]

The relevant portion of 18 Pa.C.S. § 305(b) provides:

**§ 305. Limitations on scope of culpability requirements**

\* \* \*

**(b) Effect of absolute liability in reducing grade of offense to summary offense.--**Notwithstanding any other provision of existing law and **unless a subsequent statute otherwise provides**:

> (1) when absolute liability is imposed with respect to any material element of an offense defined by a statute other than this title and a conviction is based upon such liability, the offense constitutes a summary offense;

18 Pa.C.S. § 305(b)(1) (emphasis added).

We reject Appellant's contention and rely on the qualifying phrase of Section 305(b), highlighted above. A subsequent statute, 75 Pa.C.S. § 3803(b)(4), quoted *supra*, provides that a violation of Section 3802(d), as herein, where the individual has a prior offense, "commits a misdemeanor of the first degree." 75 Pa.C.S. § 3803(b)(4). As noted *supra*, such an offense is punishable by up to five years of imprisonment. 18 Pa.C.S. § 1104(1). Therefore, we accept the Commonwealth's argument that even though the

---

[11] ***Mikulan*** was called into question in ***Commonwealth v. Griscom***, 600 A.2d 996 (Pa Super. 1991) (plurality nature of case and fact that it has never been cited, compelled ***Griscom*** Court to decline reliance on ***Mikulan***).

statute under which Appellant was convicted, 75 Pa.C.S. § 3802(d), is a strict liability offense, because the applicable statutes under both the Motor Vehicle Code, 75 Pa.C.S. § 3803, and the Crimes Code, 18 Pa.C.S. § 1104, provide for both the grading of the offense and the maximum penalty to be imposed, the default provisions of 18 Pa.C.S. § 305 are not applicable. Thus, we decline to find Appellant's sentence illegal.

Judgment of sentence affirmed.

Judge Lazarus joins this Memorandum.

Judge Musmanno concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/10/2020